Frank HILLS, Petitioner-Appellant,

v.

C. Murray HENDERSON, Warden, Louisiana State Penitentiary, Respondent-Appellee.

No. 75–2131.

United States Court of Appeals, Fifth Circuit.

March 26, 1976.

398

Henry L. Klein, New Orleans, La. (Court-appointed), for petitioner-appellant.

William J. Guste, Jr., Atty. Gen., Baton Rouge, La., Joseph B. Tosterud, Jr., Asst. Dist. Atty., Barbara Rutledge, New Orleans, La., Ossie B. Brown, Dist. Atty., Warren J. Hebert, James E. Boren, Asst. Dist. Attys., Baton Rouge, La., for respondent-appellee.

Before TUTTLE, GODBOLD and GEE, Circuit Judges.

GODBOLD, Circuit Judge:

Petitioner Hills was convicted in Louisiana state court of aggravated rape. In a 4–3 decision the Louisiana Supreme Court affirmed on direct appeal. *State v. Hills,* 259 La. 436, 250 So.2d 394 (1971). State collateral remedies were exhausted.[1] Hills then filed a federal

1. *State ex rel. Hills v. Henderson,* 286 So.2d 666 (La.1973) (mem.)

habeas corpus petition raising the question of whether due process was violated at his trial when the court allowed the prosecution to introduce evidence concerning related crimes he had allegedly committed. The District Court denied the writ without a hearing. We affirm.

The facts are fully described in the opinion of the Louisiana Supreme Court. On December 3, 1966, about 3:00 a. m., a woman, asleep in her home in Baton Rouge, awakened to find a man in bed with her. He threatened her with what appeared to be a knife, raped her, and left by the front door. Investigation disclosed that the assailant had entered by poking a coat hanger through a rear window and unlatching the back door. At trial the victim identified the petitioner as the rapist. The majority in the Supreme Court considered the identification to be strong since the victim had "[seen] the rapist clearly, retaining until trial a vivid impression of his facial features." 250 So.2d at 396. The dissenters thought the identification was less strong.

A large part of the testimony and trial time was devoted to the alleged related offenses. Sixteen days after the rape, in the early morning hours of December 19, a man broke into a home three blocks from the home of the first victim. He got into bed with a seven-year-old girl, who awakened to find that he had removed her lower clothing. He offered her money and threatened to kill her if she cried out. She testified that he did not put his hands on her, but blood and seminal stains were found on the sheet. Later that morning the child's mother discovered muddy foot tracks leading from a rear window. In the child's room were found an address book belonging to petitioner, as well as a wallet containing his driver's license and other identifying cards and papers.

The other related offense allegedly committed by the petitioner took place on November 19, before the rape, in a home six or eight blocks from the rape scene, in the early morning hours. A college student awakened to find a man in her bed, pulling at her covers and fondling her. He threatened her and offered her money for consent to sexual intercourse. She declared she would scream and he fled. A window screen was found to be slit and the front door was ajar. Also, various personal effects were discovered to be missing, including a corduroy coat which had been in the front closet. Neither the girl nor anyone else identified petitioner as the intruder. His asserted connection with this episode was founded on the fact that in mid-December the home of the student was burglarized again, and a pea coat belonging to the student's brother was stolen from the same closet. Similar methods of entrance and egress were employed on both occasions. Later the pea coat was found in a search of petitioner's home.

■ By statute Louisiana permits the prosecution to introduce evidence of related offenses where knowledge or intent is material or where the offense is one of a system. La.Rev.Stat. § 15:446.[2] There was no infirmity, evidentiary or constitutional, in the admission of the evidence concerning the assault on the child. Like the rape charged in the indictment, this incident involved illegal sexual molestation of a female by a male, accompanied by threats. It occurred in the same area of the same city, three blocks away. The dates of the two occurrences were only 16 days apart. In each case the setting chosen from among an infinite range of possibilities was the same, a victim sleeping in her bed at home. Both intrusions took place during hours of darkness and after midnight. On both occasions the intruder entered by breaking in at the rear of the house. Evidence of the assault on the child was therefore admissible under Louisiana law

---

**2.** Since petitioner's trial, by a nonretroactive decision, Louisiana has added procedural safeguards to the use of evidence of other crimes.

*State v. Prieur,* 277 So.2d 126 (La.1973), requires, inter alia, that the prosecution give prior notice of its intent to use such evidence.

to prove a system or modus operandi tending to identify the petitioner as the rapist. *State v. Lawrence,* 294 So.2d 476 (La.1974).[3] The use of related-crime evidence for this purpose does not offend due process. See *Lisenba v. California,* 314 U.S. 219, 227–28, 62 S.Ct. 280, 285–86, 86 L.Ed. 166, 175 (1941); *Manning v. Rose,* 507 F.2d 889, 893–94 (CA6, 1974).

■ The prosecution's attempt to link Hills with the assault on the college student raises more difficult problems. The Louisiana Supreme Court held that the evidence was admitted for a proper purpose, but it did not address the issue of whether the evidence had probative value at all. It is generally held that evidence of a related offense must be excluded unless there is a strong showing that the defendant did indeed commit that offense. See, e. g., *Labiosa v. Gov't of the Canal Zone,* 198 F.2d 282, 285 (CA5, 1952) ("it is required that the proof of such similar offense be clear and that evidence of a vague and uncertain character regarding such an alleged offense should not be admitted"); *United States v. Urdiales,* 523 F.2d 1245, 1247 (CA5, 1975) ("plain, clear and convincing evidence"). The Louisiana Supreme Court has itself said that the prosecution must adduce "clear and convincing evidence" that the defendant was guilty of the alleged related offense. *State v. Prieur,* 277 So.2d 126, 129 (La.1973).[4] This rule is an essential one. The oft-recognized dangers of related-crime evidence

reach unacceptable levels when the very fact of the accused's involvement in the alleged related offense is open to serious doubt.

■ Given these standards, we believe that the student's testimony was erroneously admitted. As the dissenters in the Louisiana Supreme Court argued, there was simply not enough evidence that her assailant had been Hills rather than someone else. The only nexus between that assault and the petitioner derived from his possession of the pea jacket, plus certain resemblances between the two intrusions at the student's home. There is some question as to the validity of the search that uncovered the coat. But, valid search or not, the purported indicators of identity failed by a wide margin to be a clear and convincing demonstration of Hills' responsibility for the assault on the student.[5] The possibilities of prejudice are obvious.

■■ But our conclusion that the student's testimony should not have been admitted does not automatically support habeas corpus relief. The question before us is not whether the trial court's ruling would have led to a reversal if Hills had been tried in the federal system. Nor is it sufficient that state evidentiary rules appear to us not to have been followed. *Hackworth v. Beto,* 434 F.2d 852 (CA5, 1970); *Manning v. Rose, supra,* at 892. As we have held in another case involving the same Louisiana

---

**3.** See also Wharton's Criminal Evidence § 243 (13th ed. 1972). *But see State v. Hicks,* 301 So.2d 357 (La.1974). The Louisiana Supreme Court said that the incidents were also similar in that in each case the intruder offered money to his victim, and ultimately left by the front door. We cannot find support for these statements in the record.

Because the evidence was admissible to prove modus operandi, we do not address the Supreme Court's alternative theory that the evidence was admissible to prove Hills' intent. That theory was sharply attacked by the dissenters and was discarded by the court in a later decision. See *State v. Moore,* 278 So.2d 781 (La.1973).

**4.** According to our research no specific standard of proof had been announced by the Lou-

isiana Supreme Court before the time of Hills' trial in 1967. We do not interpret the opinion of the Louisiana court in Hills' direct appeal as a rejection of the principles set out above, since the court did not even mention the issue we are discussing here.

**5.** The danger in the prosecution's development of this evidence was exacerbated by the sequence of proof. The student was first questioned about the facts of the assault; she was not asked to identify the pea jacket until the very end of her testimony on direct examination. And the testimony of a police officer concerning Hills' possession of the pea jacket, which was prerequisite to the relevancy of the student's testimony, was not adduced until after she had left the witness stand.

statute under which this evidence was offered, "the admissibility *vel non* of the evidence under state law is not determinative of a federally protected right" cognizable on habeas corpus. *Brent v. White,* 398 F.2d 503, 505 (CA5, 1968), *cert. denied,* 393 U.S. 1123, 89 S.Ct. 998, 22 L.Ed.2d 130 (1969). We examine the record in this case only to determine whether the error was of such a magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause. *Heads v. Beto,* 468 F.2d 240 (CA5, 1972), *cert. denied,* 410 U.S. 969, 93 S.Ct. 1454, 35 L.Ed.2d 704 (1973).[6] As a guideline to applying the criterion of "fundamental fairness," we have said that the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is " 'material in the sense of a crucial, critical, highly significant factor.' " *Corpus v. Beto,* 469 F.2d 953 (CA5, 1972), *cert. denied,* 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d 162 (1973).

We are unable to conclude that the admission of evidence concerning the assault on the college student was so critical in this limited sense that due process was violated. In *Gephart v. Beto,* 441 F.2d 319 (CA5), *cert. denied,* 404 U.S. 966, 92 S.Ct. 342, 30 L.Ed.2d 286 (1971), testimony about the defendant's previous sex offenses had been improperly given. The state appellate court affirmed the conviction, observing that other, more injurious testimony about the same assaults had been admitted without objection. *Id.* at 320–21 n. 1. We found no basis for habeas relief. Nor do we find a basis for it in the present case. There is always a risk of prejudice to the defendant in admitting evidence of a related offense, but in the proper context those interests give way to others more compelling.[7] Thus, with respect to the assault on the child, the risk to the defendant was so overbalanced by other factors that the evidence plainly was admissible. That risk of prejudice was increased by the improper admission of the evidence of the incidents at the student's home. Nevertheless, we are unwilling to adopt a per se rule; that is, an immutable principle that a second layer of risk, improperly imposed atop an acceptable first layer of risk, is always a constitutional violation. Rather we pursue further the same kind of balancing inquiry made in the first instance. With the prosecutrix's identification and the properly-admitted evidence of the assault on the child in evidence, the prosecution's case was simply so powerful that we cannot say that the improper admission of the evidence concerning the incidents at the student's home was so fundamentally unfair as to be a due process violation.[8]

6. A claim that an evidentiary ruling deprived a state court defendant of fundamental fairness is cognizable on habeas corpus. In *Barnard v. Henderson,* 514 F.2d 744 (CA5, 1975), we ordered relief on precisely this ground. *See also United States ex rel. Durso v. Pate,* 426 F.2d 1083, 1086 (CA7, 1970) (dictum); *Atwell v. Arkansas,* 426 F.2d 912, 915 (CA8, 1970) (dictum). Apart from review under the due process clause, this circuit's resistance to habeas challenges against state court evidentiary rulings is firmly established. *See Buchannon v. Wainwright,* 474 F.2d 1006 (CA5, 1973); *Gephart v. Beto,* 441 F.2d 319 (CA5), *cert. denied,* 404 U.S. 966, 92 S.Ct. 342, 30 L.Ed.2d 286 (1971); *Williams v. Wainwright,* 427 F.2d 921 (CA5, 1970), *vacated in part,* 408 U.S. 941, 92 S.Ct. 2864, 33 L.Ed.2d 765 (1972); *Murphy v. Beto,* 416 F.2d 98 (CA5, 1969).

7. Evidence of a similar crime must be relevant to a material fact in issue. The court must weigh the prosecutorial need for the evidence and its probative value against its inherent prejudicial effect. *United States v. Lawrance,* 480 F.2d 688 (CA5, 1973).

8. The Louisiana Supreme Court affirmed Hills' conviction on the ground that admission of the pea coat was harmless error (if erroneous at all). On a suitable record, of course, the harmless error principle is also a proper basis for denial of federal habeas relief. The principle has been invoked where the error at trial was so unimportant that it is clear, beyond reasonable doubt, that no juror was influenced by it, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and also where, whether or not jurors were in fact influenced by the erroneous ruling, the evidence against the accused was so overwhelming that the jury would, beyond reasonable doubt, have reached the same result without it. *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California,* 395

The second point on appeal concerns the alleged ineffectiveness of counsel. We agree with the District Court that ineffectiveness was not proved.

Affirmed.

U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Smith v. Estelle,* 519 F.2d 1267 (CA5, 1975), *rev'd on other grounds after reconsideration,* 527 F.2d 430 [CA5, 1976]; *Null v. Wainwright,* 508 F.2d 340, 343 (CA5), *cert. denied,* 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1973). However, these precedents are applicable only when a court finds (or assumes for argument's sake) that an error of constitutional dimensions was committed. Our application of a less stringent standard makes it unnecessary for us to reach the harmless error inquiry. Though the case law has done little to clarify the interplay between these two tests, it seems to us that an error could conceivably "contribute to the verdict" in *Chapman* terms without being "crucial" or "critical" to that verdict.