**Finis Smith BLANKENSHIP,
Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director of Texas
Department of Corrections,
Respondent-Appellee.**

No. 75–4255.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1977.

Rehearing Denied Feb. 16, 1977.

---

1. July 14, 1970.

2. June 29, 1971.

3. July 13, 1971.

4. June 28, 1971.

William P. Pannill, Houston, Tex. (Court-appointed), for petitioner-appellant.

John L. Hill, Atty. Gen., Stephen J. Wilkinson, Asst. Atty. Gen., David M. Kendall, 1st Asst. Atty. Gen., Joe B. Dibrell, Asst. Atty. Gen., Chief, Enforc. Div., John P. Griffin, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

512

Before GOLDBERG, SIMPSON and GEE, Circuit Judges.

GEE, Circuit Judge:

Petitioner-appellant Finis Blankenship appeals from the district court's denial, without evidentiary hearing, of his petition for habeas corpus relief from a state court conviction. Petitioner was convicted in a Texas state court as an accomplice to an armed robbery of a Buddies supermarket in Euless, Texas. The State alleged that Blankenship had masterminded the robbery and had forced the State's two young principal witnesses, John Brooks and Charles Crawford, to carry out the crime with petitioner's cousin Odell Blankenship, who was killed during a getaway shootout with police. Crawford and Brooks were caught outside the store, and the day following the robbery both gave independent statements to the police that they had engaged in the robbery at the behest of the other participant, Odell Blankenship, who had planned it and supplied the masks and guns they had used. Neither of the youths even mentioned petitioner Finis Blankenship in the statements to police. Nevertheless, petitioner was subsequently indicted and brought to trial on the accomplice charge.

Petitioner received a pretrial competency hearing at which the jury found him competent to stand trial. Denying petitioner's request to empanel a new jury, the court proceeded to trial on the merits before the same jury which had passed on competency.

Both Brooks and Crawford testified at trial that petitioner Finis Blankenship had planned the robbery and that they had carried it out because of their fear of him. Only their testimony directly linked petitioner to the crime, and the State's "corroborating" evidence was slim. Petitioner denied any connection with the robbery, and his wife testified that he was with her at the time of the offense. Thus, the issue at trial boiled down to a credibility contest between petitioner Blankenship and State witnesses Brooks and Crawford.

Following his conviction, petitioner learned that a fellow prisoner had overheard Brooks prior to the trial discussing a "deal" with the prosecution calling for him and Crawford to testify falsely against Blankenship in exchange for dismissal of the armed robbery and attempted murder charges then pending against them. The charges were, in fact, dropped shortly after petitioner's trial.

Blankenship's conviction was affirmed on appeal by the Texas Court of Criminal Appeals.[1] Proceeding sometimes *pro se* and sometimes with appointed counsel, petitioner has several times applied for and been refused habeas relief in the state trial and appellate courts and in the federal district court. From the federal district court's most recent denial of relief, petitioner prosecutes this appeal, raising the following issues:

(1) Whether the district court erred in dismissing petitioner's application without an evidentiary hearing on allegations that petitioner was convicted on perjured testimony knowingly used by the State and that the State had concealed a "deal" with the principal witnesses?

(2) Whether due process requirements were violated by the state trial court's refusal to empanel separate juries to pass on petitioner's competency and on the merits?

(3) Whether admission of evidence of extraneous offenses so prejudiced petitioner as to deprive him of a fundamentally fair trial?

(4) Whether memory lapses of the State's principal witnesses deprived petitioner of his Sixth Amendment right to confront and cross-examine the witnesses against him?

(5) Whether certain evidence introduced to connect him with the robbery was obtained through illegal searches and seizures?

(6) Whether he received ineffective assistance from court-appointed counsel at his trial?

1. Blankenship v. State, 448 S.W.2d 476 (Tex. Cr.App.1969).

Finding merit in petitioner's objection that the State improperly failed to disclose an alleged prosecutorial deal with its witnesses, we remand to the district court for an evidentiary hearing to determine the truth of petitioner's allegations. We find that none of the other grounds urged by petitioner necessitates federal habeas relief.

### I.

Petitioner Blankenship, relying primarily on the due process holding of *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), first argues that the lower court erred in denying his application without providing him an evidentiary hearing on his allegation that an agreement to dismiss charges against the main prosecution witnesses in exchange for their testimony was not disclosed to the jury but that, on the contrary, the prosecution allowed to go uncorrected the false impression that Brooks and Crawford would also stand trial for the armed robbery. At Blankenship's trial the prosecutor asked both Brooks and Crawford if they were under indictment for the felony offense of robbery by firearms and each replied, "Yes, sir, I am." R. at 190, 352. On cross-examination Crawford explicitly denied that he had changed his story and testified against Blankenship "to get off the hook." R. at 350. These exchanges undoubtedly created the clear impression that the two witnesses themselves faced trial on the robbery charges, thus appearing to negate any possibility that they were cooperating with the prosecution in exchange for leniency. However, in his *pro se* applications for writ of habeas corpus both in the state court and in the federal court below, Blankenship alleged that the principal witnesses against him, Charles Crawford and John Brooks, had in fact made a pretrial agreement with the prosecution to testify against Blankenship in exchange for dismissal of the charges against them. In support of this allegation Blankenship furnished with his writ application a statement from a fellow prisoner who had overheard Brooks discussing the deal with his mother, as well as evidence that the charges had been dismissed shortly after petitioner's conviction. The state trial court, the Court of Criminal Appeals, and the court below all denied petitioner's application without any inquiry into the truth of these allegations of an undisclosed prosecutorial deal.

If true, petitioner's allegation that the prosecution struck a pretrial bargain to drop the charges against Brooks and Crawford in exchange for their testimony would place this case squarely within the *Giglio* rule and entitle Blankenship to a new trial. The prosecutor in *Giglio* had allowed to go uncorrected the false trial testimony of his principal witness that he had made no deal with the government. In reality, the witness, Taliento, had received a promise that he would not be prosecuted if he testified against Giglio. In reversing Giglio's conviction, the Supreme Court observed:

> Here, the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.

405 U.S. at 154–55, 92 S.Ct. at 766.

■ Although in the instant case the testimony that Brooks and Crawford were "under indictment" may have been technically true, it left the erroneous impression of an impending trial and the absence of leniency as an inducement to testify. This court has recently made clear that we will not tolerate prosecutorial participation in technically correct, yet seriously misleading, testimony which serves to conceal the existence of a deal with material witnesses. In *Dupart v. United States*, 541 F.2d 1148 (5 Cir. 1976), a habeas petitioner alleged that the prosecution had knowingly used perjured testimony to convict him. Specifically, Dupart contended that the government's witness, Charles Brown, was a paid informant and had been promised immunity

against pending state and federal criminal charges in exchange for his services and testimony against Dupart.

At trial, on direct examination, the following exchange occurred between the Assistant United States Attorney and Charles Brown:

Q: In your dealings with the Bureau of Narcotics and Dangerous Drugs, is this a voluntary act on your part?

A: Yes, Sir.

Q: Have you—are you working for the Bureau of Narcotics and Dangerous Drugs because there is a case pending against you, or there has been a case pending against you?

A: No, Sir.

Q: Are you doing—did you do what you did voluntarily?

A: Voluntarily, yes, Sir.

Q: Did you volunteer to do this?

A: Yes, Sir.

It is clear that if the government knowingly used perjured testimony to convict the petitioner, even as to matters only affecting the credibility of a witness, then the petitioner would be entitled to relief. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). This Court is aware that "charges" rather than a "case" may be pending against a witness. Likewise a course of conduct though motivated by legally coercive alternatives such as testifying or facing a criminal prosecution, may be considered to be voluntary. However, assuming the allegations to be true, such a formalistic exchange of testimony even though technically not perjurious, would surely be highly misleading to the jury, a body generally untrained in such artful distinctions.

541 F.2d at 1149–50. The *Dupart* panel reversed the district court's denial of the petition and remanded the case for a determination of the truth of petitioner's allegation that at the time of his trial charges had in fact been pending against Brown.

■ In light of the highly misleading effect of the testimony in the instant case that Brooks and Crawford were still "under indictment," we find that the prosecutor's failure to disclose any deal it had with the witnesses falls within the rules of *Giglio* and *Dupart*, entitling Blankenship to an evidentiary hearing on his allegations and, if they prove true, to a new trial.

■ The State resists petitioner's *Giglio* claim by alleging waiver in the court below and failure to exhaust state remedies. The State argues that the principal of reading *pro se* applications liberally is inapplicable here, because Blankenship had appointed counsel in the lower court to brief and argue his grounds of error. Because court-appointed counsel failed to specifically raise and brief the *Giglio* issue, contends the State, Blankenship is foreclosed from urging it in this court—even though a liberal reading of his application might be found to raise the issue adequately. We simply cannot agree that this petitioner waived error because his appointed attorney failed to brief and argue a meritorious due process ground of error adequately raised in his *pro se* application.

■ The State further argues that the *Giglio* issue raised here on appeal has not been fairly presented to the state courts. This contention, too, we find without merit. Concededly, the particular case holding of *Giglio* was not called to the state courts' attention. However, the kernel of petitioner's complaint is that he was convicted on perjured testimony, knowingly used by the prosecution; or, at the least, that he was deprived by the State of impeachment evidence helpful and material to his defense. Courts have long been on notice that such a conviction violates due process requirements. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Petitioner's application in the state court proceedings clearly raised this issue; he is not required to cite to the state court "book and verse on the federal constitution," *Picard v. Connor*, 404

U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), in order to adequately present his constitutional claim. Petitioner has received no hearing, in state or federal court, on his serious allegations that the principal witnesses against him testified falsely in return for dismissal of the charges against them. The proffered statement of the fellow prisoner, coupled with the uncontested fact that the charges against Brooks and Crawford were dismissed, constitute adequate factual allegations to entitle petitioner to an evidentiary hearing; and, if his suspicions of perjured testimony or an undisclosed deal prove well-founded, he should receive a new trial.[2]

## II.

■ As his second ground of error, petitioner contends that he was denied due process of law when the trial court refused his request to dismiss the competency jury and empanel a new jury for trial on the merits. Allowing the jury which decided competency to pass also on guilt or innocence, reasons petitioner, is an inherently unconstitutional procedure because the kind of evidence introduced to show incompetency will by its very nature unfairly prejudice the jury against a defendant. Even if not unconstitutional *per se*, he continues, the procedure as applied deprived him of due process by exposing the jury which ultimately decided his guilt to evidence of his alleged bad character and violent nature, which was so prejudicial as to render his trial fundamentally unfair.

Neither petitioner nor the State has been able to cite us authority on the constitutionality of the single-jury procedure employed.

Because· Texas and most other jurisdictions now require separate juries to pass on competence and guilt,[3] appellate courts apparently have not had to decide the issue presented here. The State points, properly and of necessity, to law governing the analogous contention that a defendant is entitled to have separate juries pass upon a defense on the merits and an insanity defense. This Court has held that neither the denial of a bifurcated trial nor the refusal of separate juries on insanity and merit defenses represents constitutional error. *United States v. Milne,* 498 F.2d 329 (5 Cir. 1974); *United States v. Huff,* 409 F.2d 1225 (5 Cir. 1969).

In *Huff* we specifically rejected a D.C. Circuit case, *Holmes v. United States,* 124 U.S.App.D.C. 152, 363 F.2d 281 (1966), which had advanced reasons similar to petitioner's here and relied on the inherent inconsistency and prejudice in simultaneous trial of insanity and merit defenses to hold that bifurcation and separate juries might be constitutionally required in appropriate cases. *Accord, Williams v. District of Columbia,* 136 U.S.App.D.C. 56, 419 F.2d 638 (1969).

The *Huff* court relied heavily upon *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), to support its holding that separate juries are not constitutionally · mandated. In *Spencer* a Texas defendant challenged the practice of receiving, during trial on the merits, evidence of prior felony convictions under the state's recidivist or habitual-criminal statute for punishment enhancement. Use of prior convictions in the trial, contended the defendant, was so

---

**2.** Although *Giglio* was decided after Blankenship's trial, we see no problem with applying its holding here. In deciding *Giglio* the Supreme Court relied on the well-established rules of *Mooney, Pyle, Napue,* and *Brady, supra* ; the Court gave no indication that it was announcing some bold new legal concept necessitating prospective application only. The decided caselaw at the time of Blankenship's trial and state writ applications clearly proscribed convictions on perjured testimony knowingly used by the State and nondisclosure of prosecutorial deals with material witnesses. *See Corpus v. Beto,* 469 F.2d 953 (5 Cir. 1972),

*cert. denied,* 414 U.S. 932, 94 S.Ct. 236, 38 L.Ed.2d 162 (1973), applying *Giglio* to previously decided Texas cases.

**3.** Tex.Code Crim.Proc.Ann. art. 46.02 (Supp. 1975).

Blankenship's competency hearing was conducted under an earlier version of article 46.02, which had been judicially interpreted to allow the same jury to pass on both competency and guilt. Tex.Code Crim.Proc.Ann. art. 46.02 (1966); *Townsend v. State,* 427 S.W.2d 55 (Tex. Cr.App.1968).

prejudicial upon the issue of guilt as to deny due process. The Supreme Court rejected defendant's claim of a right to bifurcated trial, pointing out in strong language that rules of evidence and criminal procedure lie peculiarly within the province of the states and should not casually be disturbed by federal courts. Although the Court recognized the possibility of some prejudice in the Texas procedure and the availability of less prejudicial alternatives, it refused to overrule the State's choice.

Recognizing that competency to stand trial represents a different inquiry than insanity as a defense, we nevertheless fail to see how the procedure upheld in *Huff* and *Milne* of allowing one jury to hear evidence on guilt and insanity is any less prejudicial than allowing the same jury to pass on competency and guilt. In fact, an insanity defense is more likely than a competency inquiry to be inherently inconsistent with a defense on the merits, since a defendant is practically required to admit committing the crime in order to prove his insanity at the time of the offense.

Although the single-jury procedure employed in Blankenship's trial may have prejudiced him to some degree, *Huff* and *Milne* stand in formidable opposition to his claim of a due process violation. In addition, *Spencer's* deference to state evidentiary and procedural practices demonstrates that a defendant must make an extremely strong showing before a federal court will find a denial of the "fundamental elements of fairness in a criminal trial," *Spencer,* 385 U.S. at 563–64, 87 S.Ct. at 653, guaranteed by the due process clause.

Thus, we decline to declare that the one-jury procedure for determining both competency and guilt is unconstitutional *per se.* Nor, on the particular facts of this case, do we find that the procedure robbed Blankenship's trial of the requisite "fundamental fairness."

### III.

Petitioner next urges that admission of certain extraneous-offense evidence was so prejudicial as to deny him due process. He points particularly to the following items of proof:

(1) Statements by witnesses Crawford and Brooks that Blankenship had told them that he shot three men.

(2) A statement by Brooks that petitioner had said that a man whom he did not particularly like and who did not do what petitioner wanted him to do was in a "shallow grave" in Oklahoma.

(3) Evidence that Blankenship participated in a robbery of Minyard's supermarket subsequent to the charged robbery.

(4) Evidence of petitioner's underworld dealings as a police informer and with a local "gang."

(5) Evidence of his past convictions for arson (1959) and rape (1954).

█ In assessing the propriety of federal habeas relief based on a state court's admission of allegedly improper evidence, this court should grant relief only if "the error was of such a magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause." *Hills v. Henderson,* 529 F.2d 397 (5 Cir. 1976). *Hills, supra; Heads v. Beto,* 468 F.2d 240 (5 Cir. 1972), *cert. denied,* 410 U.S. 969, 93 S.Ct. 1454, 35 L.Ed.2d 704 (1973); and *Gephart v. Beto,* 441 F.2d 319 (5 Cir.), *cert. denied,* 404 U.S. 966, 92 S.Ct. 342, 30 L.Ed.2d 286 (1971), establish that this court should not provide collateral relief simply because the state court's challenged conduct would have led to reversal if the defendant had been tried in the federal system; nor is relief authorized even if state evidentiary rules appear to have been violated. The *Hills* opinion reiterated a recognized guideline to assessing fundamental fairness: "the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is 'material in the sense of a crucial, critical, highly significant factor.' " 529 F.2d at 401.

█ In the instant case, the Texas Court of Criminal Appeals, either on direct appeal or habeas application, has considered all of

petitioner's extraneous-offense claims and ruled that admission of the challenged evidence violated no Texas evidence rules. Thus, the law of this Circuit as reflected in *Hills, Head,* and *Gephart, supra,* as well as the deference to state evidentiary rules dictated by *Spencer v. Texas, supra,* foreclose habeas relief in this case unless we are convinced that admission of the challenged evidence resulted in a denial of fundamental fairness.

The evidence probably most damning to Blankenship's case—that he told Brooks and Crawford he had killed three or four people and that he participated in another grocery store robbery—was also most necessary and relevant to the prosecution's case. The alleged statements about prior killings made to Brooks and Crawford helped show why they might have felt forced to rob at Blankenship's order. Petitioner's involvement in the Minyard robbery tended to weaken his complete denial of participation in the Buddies crime by showing that he had been involved in another similar offense. Admission of the other contested evidence—of alleged underworld dealings and 10–15 year old convictions—even if erroneous, does not seem to have been such "a crucial, critical, highly significant factor" in Blankenship's conviction as to constitute denial of a fundamentally fair trial.

### IV.

Petitioner additionally contends that he was, in effect, deprived of his right to confront witnesses by Brooks' and Crawford's apparent memory lapses at trial as to details of the armed robbery and circumstances surrounding their statements to police shortly after the crime in which they had failed to mention Blankenship's alleged complicity.

The State correctly points out that petitioner's failure to raise specifically this confrontation issue either in the state courts or in the court below forecloses its consideration here. However, even if the issue had been fairly raised in other courts, we could not conclude on this record that Blankenship was denied his Sixth Amendment confrontation rights by the witnesses' feigned or actual memory lapses. Such questions were for the jury.

We have also examined petitioner's claims of an illegal search and seizure and ineffective assistance of trial counsel raised in his *pro se* brief and find them to be without merit.

The case is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for an evidentiary hearing on the existence of a prosecutorial deal with the State witnesses.

GOLDBERG, Circuit Judge, concurring specially:

I concur in the result reached by the majority. I join the majority opinion itself with the exception of Part III, which is concerned with the admission of other crimes evidence at appellant's trial. The opinion may imply what I would make explicit; because I cannot be certain, however, I add this special concurrence.

We are of course not concerned with federal or state evidentiary rules regarding extraneous offenses. Nothing in the majority opinion or this concurrence may be read as a determination that the evidence in question could have been admitted in a federal prosecution. We are concerned here only with the fundamental fairness required by the due process clause.

Beginning from the established proposition that "the erroneous admission of prejudicial evidence can justify habeas corpus relief if it is 'material in the sense of a crucial, critical, highly significant factor,' " *Hills v. Henderson,* 529 F.2d 397 (5th Cir. 1976), the majority concludes that the introduction of two concededly significant sets of evidence relating to other crimes did not rob Blankenship's trial of that fundamental fairness. The majority notes without more that the evidence—that Blankenship had participated in a supermarket robbery subsequent to that involved in this appeal and that he had told his accomplices Brooks and Crawford that he had killed men in the past—was relevant and necessary to the prosecutor's case.

That observation seems unobjectionable as far as it goes.[1] The problem is that the analysis leaves some implication that the due process inquiry is at an end when other crimes evidence is found to be important and relevant to the prosecution. Evidence of other offenses, however, will be of greatest importance to the prosecution whenever the case against the defendant is weak. That situation is of course also the situation in which the evidence contains the greatest potential for prejudice.

That potential for prejudice is the source of the requirement that introduction of other crimes evidence be predicated upon a strong showing that the defendant in fact committed the other offense. *Hills* itself applied such a requirement in the habeas context. The majority here fails to discuss the strength of the link between Blankenship and the other offenses, perhaps assuming that its sufficiency is obvious. Absent a sufficient connection, admission of at least the evidence of the subsequent supermarket robbery would have been a material error in the *Hills* due process sense, for the evidence of Blankenship's participation in the robbery of which he stands convicted was almost entirely the uncorroborated testimony of accomplices. Only because I am satisfied that the link between Blankenship and the

other offenses comported with the due process guidelines of *Hills* do I agree that this point of appeal does not call for habeas relief.

There was here a strong showing that Blankenship participated in the subsequent robbery. Eyewitnesses to the Minyard's robbery saw the two perpetrators make their way in one car to a dead-end street. There they transferred to a white 1966 Chevrolet, the same color and model as Blankenship's auto. A man resembling Blankenship then drove the car to an area adjacent to Blankenship's property; forty-five minutes later, a man positively identified as Blankenship drove a white 1966 Chevrolet away from that property.

I cannot conclude that this connection between Blankenship and the Minyard's robbery was deficient under due process or Texas standards.[2] This is not a case in which, as in *Hills,*

> The oft-recognized dangers of related-crime evidence reach unacceptable levels when the very fact of the accused's involvement in the alleged related offense is open to serious doubt.

*Hills, supra,* 529 F.2d at 400.[3]

The due process challenge to the witnesses' statements that appellant had told them

---

1. The first step toward a determination that other crimes evidence is admissible is finding an applicable exception to the general rule excluding such evidence. It is not immediately clear that the evidence of the subsequent supermarket robbery fell close to any of them.

   Certainly I would take exception to any suggestion that evidence of similar offenses, as opposed to convictions, is admissible simply to discredit a defendant's denial of participation in the offense with which he is charged. This is the very sort of use of other crimes to show predisposition against which the general rule is a protection. Were that the only purpose served by admitting this highly significant evidence at Blankenship's trial, a serious due process question would be raised.

   In the particular factual setting here, admission of the subsequent robbery served at least in some fashion to show a system of similar robberies in which Blankenship was involved although never directly on the scene himself. I emphatically reiterate that I make no suggestion that such a theory would pass muster under the federal rules of evidence. On the facts here, however, the theory was closely

enough related to one of the traditional justifications for admission of evidence of extraneous offenses that, given the strong indication Blankenship was involved in the subsequent robbery, the fundamental fairness standard was not violated.

2. Because the strength of the connecting evidence in the instant case meets all the standards discernible in *Hills,* this panel need not determine how great a connection due process requires, regardless of the standard set by state law.

3. *Hills* itself was concerned with the admission in a rape prosecution of evidence relating to a similar assault. No evidence directly connected the defendant to that assault; rather, he was found in possession of a coat stolen from the victim's house in a burglary a month after the assault.

   This court found the evidence was erroneously admitted. Given the strength of the prosecution's case and the proper admission of still other related crimes evidence, we concluded, however, that the error did not rise to the level of fundamental unfairness.

he had previously killed men also fails. The statements could not have been offered as proof that Blankenship had in fact killed men in the past. Nevertheless the witnesses could testify as they did that Blankenship himself made these threatening statements during the process of persuading the two to carry out the robbery. The statements simply did not serve as evidence of other crimes. Rather, the threats in themselves were relevant to the manner in which Blankenship carried out the crime, a question put hotly in dispute at trial.

Nothing in the majority opinion suggests disagreement with my analysis of the admissibility of the other crimes evidence at Blankenship's trial. I have written separately in order again to make explicit the requirement, applied in the habeas context in *Hills,* of a strong probative link between the defendant and the other crimes. Having done so and having found such a link in the instant case, I join in the disposition announced by the majority and in the excellent remainder of Judge Gee's opinion.