**Delfin RAMOS COLON, Petitioner, Appellant,**

v.

**UNITED STATES ATTORNEY FOR the DISTRICT OF PUERTO RICO, Respondent, Appellee.**

No. 76–1537.

United States Court of Appeals, First Circuit.

Argued Feb. 14, 1978.

Decided May 17, 1978.

Jose Antonio Lugo, New York City, with whom Elizabeth M. Schneider, New York City, Juan Ramon Acevedo, Hato Rey, P.R., William H. Schaap, Washington, D. C., and Jose B. Diaz Asencio, Trujillo Alto, P.R., were on brief, for appellant.

Herbert W. Brown, III, Asst. U.S. Atty., San Juan, P.R., with whom Julio Morales Sanchez, U.S. Atty., San Juan, P.R., was on brief, for appellee.

*Of the Second Circuit, sitting by designation.

Before COFFIN, Chief Judge, MOORE,* Senior Circuit Judge, BOWNES, Circuit Judge.

COFFIN, Chief Judge.

This case raises questions concerning the duty of a district court to investigate and punish alleged prosecutorial misconduct at the insistence of a private party. Appellant was a defendant in a criminal case who obtained dismissal of the charges against him when, during the second day of trial, the assistant United States Attorney represented to the district court that the government could not prove its case. Appellee is the United States Attorney for the District of Puerto Rico. Appellant seeks review of an order of the district court refusing to conduct a hearing on his allegations that the government had acted in bad faith in prosecuting him for his political beliefs, knowing it had insufficient evidence; declining to appoint a special prosecutor to investigate the matter further; and denying his motion to reconsider. In the alternative, appellant petitions for a writ of mandamus compelling the district court to provide the relief sought below.

On July 21, 1974, approximately 3,650 pounds of iremite, a highly explosive substance, were stolen from the Iremco Manufacturing plant in Manati, Puerto Rico.[1] Through November and December, 1974, a rash of bombings occurred in the Commonwealth. Puerto Rico police, suspecting sympathizers of the Puerto Rico Socialist Party (PSP) as the perpetrators, searched the homes of a number of party members. Appellant, allegedly a PSP member, was the object of a search on December 3, 1974, but Commonwealth police found nothing inculpatory in his home.

Several days later, a federal informant who was said to have provided reliable information in the past told federal agents he had reason to believe appellant was concealing explosives the Puerto Rican police had

1. A federal agent testified before the grand jury that Iremco was the only manufacturer of iremite in Puerto Rico.

overlooked during their search. According to the informant, appellant had been afraid to remove the explosives because the house where he lived was under constant police surveillance. On the basis of that information, a warrant issued for the search of appellant's residence. It was executed by federal agents on December 14, 1974. By moving a work bench on the concrete floor of appellant's basement, agents discovered a hole, five feet in diameter, covered by a concrete slab. In it were three homemade iremite bombs, two blasting caps, detonating cords, and other bomb-making paraphernalia. Appellant was subsequently arrested.

On December 18, 1974, an assistant United States Attorney presented to the Grand Jury four witnesses; two from the Federal Bureau of Investigation who had participated in the search and two agents of the Alcohol, Tobacco and Firearms Unit who had also been participants. The Grand Jury handed down a two count indictment charging Ramos Colon with concealing explosives, knowing them to be stolen, in violation of 18 U.S.C. § 842(h); and storing explosives in an improper facility, in violation of 18 U.S.C. § 842(j).

From the outset this litigation has been highly charged. A steady current of pretrial motions, governmental responses, and objections to the responses filled the seventeen month period between indictment and trial. A jury was finally empaneled on May 3, 1976. On the second day of trial, the assistant United States Attorney represented to the district court that he felt it his duty to report that certain problems in the government's case had come to his attention. In 1974 or early 1975, while the explosives were in transit from Puerto Rico to the Federal Bureau of Investigation headquarters for analysis, an airman aboard the aircraft had stolen the blasting caps. Although the caps were subsequently recovered, the chain of custody necessary to establish their admissibility at trial had been broken. Thus, the government could not proceed on count 1 of the indictment. The assistant further reported that he had been unable to obtain certain documentary evidence relating to ownership of appellant's house and the iremite which was essential to its case against appellant on count 2 of the indictment. A defense motion to dismiss with prejudice was granted.

Defense counsel then orally urged the court to initiate an investigation into the failure of the United States Attorney's office to bring its lack of proof to light earlier, so as to avoid subjecting appellant and the court to protracted and costly litigation. The court commented: "in all of the time that I have been practicing law and in the short time that I have been a Judge, I have never seen such incredible and outrageous conduct on behalf of the government." Some five months later, after having reviewed the record of the prosecution, the court concluded that no further investigation or action was necessary and denied the defense request. A motion to reconsider, which sought the appointment of a special prosecutor to investigate the charge, was also denied. This appeal and petition for writ of mandamus followed.

There is no quarrel between the parties that "the inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 888 (5th Cir. 1968). *See also Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976); *In re Carroll*, 416 F.2d 585, 587 (10th Cir. 1969); *Sanders v. Russell*, 401 F.2d 241, 246 (5th Cir. 1968); *Levenson v. Mills*, 294 F.2d 397, 398 (1st Cir. 1961). Nor is there question that the court's supervisory power extends to discipline of government attorneys. *See Smith v. Katzenbach*, 122 U.S. App.D.C. 113, 117, 351 F.2d 810, 814 (1965). Indeed, the public interest demands that prosecutors be held to the highest standard of conduct. *See id.,* 122 U.S.App.D.C. at 119, 351 F.2d at 816; *Imbler v. Pachtman*, 424 U.S. 409, 420, 96 S.Ct. 984, 47 L.Ed.2d 128 (1975). At issue is whether a criminal defendant claiming to have been the victim of prosecutorial impropriety may insist that sanctions be imposed.

Ordinarily, questions concerning the ethical behavior of prosecutors arise in the context of an appeal by a defendant who complains that an impropriety rendered his conviction invalid. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (failure to disclose exculpatory evidence); *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (knowing use of false testimony at trial); *United States v. Kelly*, 556 F.2d 257 (5th Cir. 1977) (selective prosecution); *United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974) (use of perjured testimony to procure indictments); *Dixon v. District of Columbia*, 129 U.S.App.D.C. 341, 394 F.2d 966 (1968) (reneging on agreement not to prosecute in retaliation for defendant filing citizen complaint). Where a factual basis for the allegations is proven, and the misdeeds are found to have impugned the fundamental fairness of the trial, precedent authorizes reversal of the conviction and remand for a new trial. *See Brady v. Maryland, supra.* In extreme cases, dismissal of the indictment is warranted.[2] *See United States v. Kelly, supra*, 556 F.2d at 264; *United States v. Bourque*, 541 F.2d 290, 293 (1st Cir. 1976); *United States v. Steele*, 461 F.2d 1148 (9th Cir. 1972). *See also* Note, *The Supervisory Power of the Federal Courts*, 76 Harv.L.Rev. 1656, 1663 (1963).

The government did not challenge the propriety of dismissing the indictment with prejudice once the state of the evidence became known. It argues, however, that dismissal ended appellant's cognizable interest in pursuing the charges of misconduct either before the district court or on appeal. Appellant counters that even after dismissal was granted, the personal anxiety and public ignominy of having been accused of a crime and subjected to seventeen months of litigation gave him standing to insist on further inquiry, either by the court itself or by a special prosecutor judicially appointed to the task.[3]

Neither party has pointed to clear authority for his position on this issue. Some light is shed on the problem by an analysis of the sanctions available to a district court in the event of attorney misconduct. In *United States v. Colon Lespier*, 558 F.2d 624, 629 (1st Cir. 1977), we recently enumerated the disciplinary weapons in a district court's arsenal. They include citation for contempt, suspension for a limited time of the right to practice before the court, censure, informing the appropriate disciplinary bodies of the misconduct, and imposition of costs. *See also Flaksa v. Little River Marine Construction Co., supra*, 389 F.2d at 888; ABA *Standards Relating to the Function of the Trial Judge* (Approved Draft 1972) § 6.5. We discuss each in turn.[4]

At the severe end of the spectrum is citation for contempt. *See* 18 U.S.C. § 401. That sanction takes two forms, civil and criminal, which are distinguishable in the nature of the wrong they are designed to rectify and the recognized interests of litigants in their imposition. Civil contempt

---

**2.** Other remedies less drastic than dismissal, such as the suppression of evidence obtained as a result of official misconduct, may have the same effect of ending prosecution. *See Dixon v. District of Columbia*, 129 U.S.App.D.C. 341, 345 n.8, 394 F.2d 966, 970 n.8 (1968).

**3.** Precedent lends some support to the argument that dismissal of an indictment may not fully vindicate a criminal defendant wrongly accused. *United States v. Biddings*, 416 F.Supp. 673, 675 (D.N.D.Ill.1976), suggests that only acquittal after trial serves that purpose. Appellant obviously preferred dismissal to a not guilty verdict, for he made the motion to dismiss the indictment. In *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975), also cited by appellant, the court concluded that the lingering effects of having been prosecuted

may make expungement of an indictment an appropriate remedy in addition to dismissal. Appellant did not seek expungement, however, and we make no comment on whether he would be entitled to it.

**4.** Judge Moore would omit discussion of the range of sanctions to be considered, since he concludes that, in view of the facts as developed with respect to the theft of the iremite, the bombings, the search, the discovery of bombs, and the bomb-making paraphernalia, the presentation to the Grand Jury and the indictment returned by it, the prosecutor was justified in proceeding to trial; the resulting failure of proof was not attributable to any motive to harass the defendant.

exists to recompense a private party for a loss occasioned by the failure of another to comply with a court order. *See Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 910 (3d Cir. 1975); *Parker v. United States*, 153 F.2d 66, 70 (1st Cir. 1946). Strictly a remedial action, civil contempt arises out of the main suit and may be maintained by a private party, *Parker v. United States, supra*, 153 F.2d at 71.[5] It is aimed at restoring the parties to the positions they would have held had the order been obeyed. *See Kienle v. Jewel Tea Co.*, 222 F.2d 98, 100 (7th Cir. 1955).

 Once the wrong to the litigant is rectified, as occurred here when the charges were dismissed, any remaining affront is to the dignity of the court, *id.* Such transgressions are punishable by citation for criminal contempt, *see Ex parte Terry*, 128 U.S. 289, 303, 9 S.Ct. 77, 32 L.Ed. 405 (1888); *Walling v. Crane*, 158 F.2d 80, 83 (5th Cir. 1946). Unlike its civil corollary a proceeding for criminal contempt takes place independent of the litigation in which the alleged contumacious conduct occurred and no longer involves the original litigants as the parties of interest.[6] Thus it has been held that

> "[A] private person, as informant, is not a proper party to a criminal contempt proceeding. His only office in such a proceeding is served when he calls to the court's attention facts which may constitute criminal contempt. Having done so, the matter is out of his hands, and fur-

ther proceedings are conducted through the office of the court or the United States as the representative of the public, in vindication of the court's dignity and authority . . . Whether such a proceeding should be instituted is a matter concerning [the alleged contemnor] and the public, in which [a party's] interest is no greater than that of every member of the general public." *Kienle v. Jewel Tea Co., supra*, 222 F.2d at 100.

A party to the original litigation has no standing to prosecute an action for criminal contempt or to take an appeal from the court's rejection of his allegations, *id. See also Latrobe Steel Co. v. United Steelworkers*, 545 F.2d 1336, 1343 (3d Cir. 1976).[7]

 The same is true of a second remedy available to a district court: suspension of the right of the offending attorney to practice before the court. In *Mattice v. Meyer*, 353 F.2d 316 (8th Cir. 1965), a private citizen filed a complaint to have the Attorney General of Nebraska disbarred on account of an alleged ethical violation. In dismissing an appeal from the district court's refusal to act, the court referred to the language of *Ginsburg v. Stern*, 125 F.Supp. 596, 603 (W.D.Pa.1954), *aff'd*, 225 F.2d 245 (3d Cir. 1955):

> "Plaintiff's petition, just as any other complaint of professional misconduct, merely supplied information for the court's consideration. It is ridiculous to assert that the court has no alternative

---

5. The authorities cited by appellant for the proposition that a litigant may maintain and appeal an action for the imposition of sanctions on account of misconduct involved civil contempt proceedings. *See Davis v. Board of Commissioners of Mobile County*, 517 F.2d 1044, 1048 (5th Cir. 1975); *Gilbert v. Johnson*, 490 F.2d 827, 829 (5th Cir. 1974). In neither case was a prosecutor the intended object of discipline. We need not resolve whether in light of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), civil contempt proceedings may be instituted against a prosecutor by a private individual, for even if they could, in this case once the charges were dismissed, the suit was at an end, and citation for civil contempt would no longer have been appropriate, *see Parker v. United States*, 153 F.2d 66, 71 (5th Cir. 1946).

6. The extent of due process safeguards required in criminal contempt proceedings depends on whether the alleged objectionable conduct occurs within or without the presence of the judge, *see* Fed.R.Crim.P. 42(a); *In Matter of Lamson*, 468 F.2d 551, 552 (1st Cir. 1972). *See also Sussman v. Commonwealth*, Mass.Adv.Sh. (1978) 754, 758, 374 N.E.2d 1195.

7. There is no question that an individual adjudged in contempt may appeal. *See United States v. Cox*, 342 F.2d 167, 172 (5th Cir. 1965). That is so because the contempt citation is a final order and because the injury incurred by the individual on account of it confers standing to seek review.

but to take action against the person complained of. If the court considers that no offense has been committed; or that the allegations of the complaint are insufficient, immaterial, impertinent or scandalous; or that the complaint has been filed from an improper motive; or for any other reason decides not to proceed with the matter, the complainant has no recourse."

That reasoning has been cited with approval in a variety of actions in which an individual has sought suspension or other disciplinary action against an attorney. *See Action of Phillips*, 510 F.2d 126, 127 (2d Cir. 1975) (per curiam); *In re Echeles*, 430 F.2d 347, 350 (7th Cir. 1970); *In Matter of Teitelbaum*, 253 F.2d 1, 2 (7th Cir. 1958).[8]

■ The remaining sanctions available to the district court, reprimand, imposition of costs, and reporting the misconduct to the appropriate professional association, are less severe than citation for contempt or suspension from practice.[9] As with the others, however, the decision to utilize them rests in the discretion of the district court. A private party cannot challenge the court's decision not to discipline. *See Mattice v. Meyer, supra*, 353 F.2d at 319.

■■ This would be a different case if the district court had denied the motion to dismiss and appellant had been put to trial and convicted. However, with dismissal of the charges appellant received the relief to which he was entitled by law, *see United States v. Kelly, supra*, 556 F.2d at 264. Indeed, the district court in this case went one step further and reviewed the record of the case before concluding that no additional action on the charges was required, *see id.* The law does not recognize a right in appellant to insist on more.[10]

In the alternative appellant argues that even if he could not pursue the charges, the injury to the public interest occasioned by the governmental misconduct created an obligation in the district court to appoint a special prosecutor to investigate the matter. While a number of state courts are by statute or common law empowered to designate private attorneys to prosecute public causes, Note, *The Special Prosecutor in the Federal System*, 11 Am.Crim.L.Rev. 557, 578 (1973), neither appellant nor our own research discloses a similar authority extended to United States district courts.[11] *In United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), the Fifth Circuit approached the question, but did not have to decide it. There a district court, unconvinced that granting a government motion to dismiss an indictment was in the interests of justice, denied it. Ostensibly acting under power derived from Fed.R.Crim.P. 48(a), the court appointed a special prosecutor to press the charges against the defendant. On appeal the conclusion that the district court had improperly refused the motion to dismiss obviated the need to resolve whether a special prosecutor could have been appointed, and the court specifically declined to comment on the issue, *id.* at 514. *Cowan* thus provides no support for appellant's claim.

Similarly, federal statutes do not advance appellant's cause. 28 U.S.C. § 546 permits a district court to appoint a temporary

---

8. In *In re Echeles*, 430 F.2d 347 (7th Cir. 1970), the United States Attorney was permitted to appeal the dismissal of disciplinary proceedings against an attorney, not because the court concluded he had an interest in the matter, *id.* at 350, but because the Executive Committee of the district court in an unchallenged action authorized him to appeal.

9. It has been observed that judges should be encouraged to impose the least severe sanction appropriate to correct attorney misconduct and deter its repetition. *See* ABA *Standards Relating to the Function of the Trial Judge* (Approved Draft 1972) § 6.3.

10. Appellant argues that the government's failure to assert before the district court that appellant lacked standing amounts to a waiver of that claim on appeal. As we have noted, however, a party without cognizable interest to proceed below is disqualified from prosecuting an appeal. *See Kienle v. Jewel Tea Co.*, 222 F.2d 98, 100 (7th Cir. 1955). We are thus obliged to resolve the standing question.

11. It is the view of the commentator cited in the text that no such authority exists.

United States Attorney, but only when a vacancy exists in the office of the United States Attorney for that district. Clearly that situation did not obtain here. Equally inapposite is 28 U.S.C. § 543, which permits designation of attorneys to assist the United States Attorney "when the public interest so requires". Exercise of that power is specifically confined to the Attorney General of the United States. The most well-known appointment of a special prosecutor, which resulted in investigation of criminal charges involving a President, was made by the executive branch of the government, not by a court. See 28 C.F.R. Subpart G–1.

It is thus by no means certain that the district court had the power to appoint a special attorney to investigate acts of the federal prosecutor.[12] Even if it did, nothing clearly indicates that a private party may appeal the refusal to exercise it. Indeed, analogy to precedent discussing other sanctions which are undoubtedly within the province of the district court to impose suggests that appellant lacks standing to take this appeal.[13] See Kienle v. Jewel Tea Co., supra, 222 F.2d at 100.

We need not decide those difficult questions here, however, for even if they were resolved in appellant's favor, we would be reluctant to conclude that the district court had a duty to make further inquiry into the defense allegations in the circumstances of this case. See Mattice v. Meyer, supra, 353 F.2d at 319. The crux of the complaint is that the prosecution subjected appellant to seventeen months of litigation when it knew all along it lacked the evidence necessary to convict. That is something of an overstatement. To be sure, the record does

not reveal the quantum of evidence needed to prove guilt beyond a reasonable doubt. However, there was sufficient evidence of some of the elements of the crime to indicate that the prosecution was at least initiated in good faith. The search of appellant's house produced, among other items, three amateur bombs made of iremite, blasting caps, and detonating cords, all buried under the basement floor. It was on the basis of this evidence that the prosecutor obtained the Grand Jury indictment.

Although in the government's possession at the time of trial, the items seized were inadmissible because of a rule of evidence requiring the government to account for custody of them between the time of seizure and their introduction into evidence. The break in the chain of custody was the result of the theft of the blasting caps by a crewmember of the aircraft transporting the explosives for analysis; this information the prosecutor represented to the court had been but recently obtained.

■ Similarly, and contrary to appellant's argument, evidence that the explosives were stolen was not totally absent. Although not required to do so, a jury could have believed that element of the crime was established from the surreptitious concealment of the explosives under appellant's basement, the lack of evidence that appellant had made a valid purchase of them, see 18 U.S.C. § 842(b)(1), and substantiation of the government agent's assertion before the grand jury that the victim of the July 21, 1974 theft of iremite was the only manufacturer of that substance in Puerto Rico. Finally, although no evidence was presented

---

12. The dearth of authority in support of the action appellant urged on the court below has many explanations. Courts have traditionally been reluctant to constrain prosecutors in the performance of their duties either directly, by requiring them to take specific actions, see United States v. Cowan, 524 F.2d 504 (5th Cir. 1975), or by exposing them to civil liability for their official conduct, see Imbler v. Pachtman, supra, 424 U.S. at 423, 96 S.Ct. 984. Moreover, federal prosecutors are appointed by the executive branch of the government and a judicial designation of a private attorney to investigate their official acts may run afoul of the constitu-

tional doctrine of separation of powers, see Note, The Special Prosecutor in the Federal System, supra, at 583.

13. Although the Fifth Circuit concluded in United States v. Cowan, supra, 524 F.2d at 505, that an order appointing a special prosecutor is appealable, the reverse is not necessarily true. The defendant in that case was in a position analogous to that of an individual adjudged in contempt who, being injured by the action, has standing to appeal. See United States v. Cox, supra, 342 F.2d at 172.

because the case never went to trial, it does not defy credulity to suggest that concealment of a highly explosive substance such as iremite in a crude hole beneath a private dwelling might have violated 18 U.S.C. § 842(j), which requires storage in a proper facility.

As for the seventeen month delay in bringing appellant to trial, asserted to be intentional harassment on the part of the government, the docket entries reveal that, during the period between the indictment and the order granting the motion to dismiss, appellant filed some 43 motions, each requiring reply by the government and decision by the district court. Ten of them were defense requests for continuance, one seeking a six month postponement. Of course a criminal defendant cannot be penalized for asserting his procedural and substantive rights. However, having contributed to delays in the proceedings by so doing, he cannot then complain that the government failed to bring him to trial with lightning speed. See Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

The district court's assertion that it had never seen "such incredible and outrageous conduct on behalf of the government", upon which appellant places considerable reliance in arguing the impropriety of the government's actions, is taken somewhat out of context. Obviously, the court was irritated at having needlessly been put to the time and expense of drawing a jury, and exasperated with the government for its tardiness in coming forward, and even its ineptness. But the remark offers not a suggestion of bad faith.[14]

Before us appellant adds other armament to his attack on the government by arguing that the considerable publicity given the November and December, 1974, bombings

in general, and the prosecution of the case against him in particular, evidences the government's intent to harass him. Specifically he points to the timing of the search of his house and his arrest in relation to extensive press coverage of PSP members and their activities. We must agree with the government that it has no control over when or what the press chooses to print about matters of public record. See Delaney v. United States, 199 F.2d 107, 113 (1st Cir. 1952). The mere fact that related occurrences are receiving public attention does not prohibit the government from executing a valid search or arrest warrant. In any event, any need to remedy the effects of prejudicial publicity by the traditional means of continuance, change of venue, or cautionary instruction to the jury was obviated by dismissal of the charges. See id.

Finally, appellant claims that the prosecutor's reference before the Grand Jury to appellant's membership in the PSP raises a suspicion of governmental persecution on the basis of political beliefs which warranted investigation. Were the comments made to a convicting jury we might have greater cause for concern, see United States v. Goldman, 563 F.2d 501 (1st Cir. 1977). However, appellant was afforded the relief recognized in the precedent when the charges were dismissed.

We by no means endorse the government's conduct in this case. By far the better course would have been for the prosecutor to make his position known much earlier in the process. Moreover, in holding that appellant had no standing to challenge the alleged misconduct or to take this appeal, we should not be misinterpreted as discouraging district courts from conducting inquiry into suspected unethical behavior when the particular circumstances appear to warrant it. Nor do we intend to

14. In United States v. Weiss, 491 F.2d 460, 468 (2d Cir. 1974), the court noted: "Experience teaches that quotations lifted out of the transcript can often be unintentionally misleading, since they usually fail to give a true or complete picture of the framework for and background of the allegedly prejudicial comments. Counsel, being advocates, also tend to attach excessive significance to some remarks and to overlook counterbalancing portions of the record." Such is the case here. Appellant's portrayal of the facts and inclusion of isolated quotations from precedent appear in general to be more overzealous advocacy than just cause for the indignation we are urged to feel.

silence parties or counsel who encounter impropriety on the part of an opponent. On the contrary, "[w]hen an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to the court's attention", *In re Gopman,* 531 F.2d 262, 265 (5th Cir. 1976). Opposing counsel may in fact be in the best position to inform the court, *id.* Having done so, however, the role of a party or counsel is at an end. It remains for the court to vindicate its authority, if it so chooses, *Mattice v. Meyer, supra,* 353 F.2d at 319.[15]

In addition to its firm foundation in precedent, policy dictates this result. If appeals such as this were permitted, prosecutors would be discouraged from confessing error to the district court. Rather than agree to a *nolle prosequi* or dismissal, a prosecutor, motivated by fear of exposure to discipline at the behest of the exonerated defendant, would take every case, no matter how unsubstantiated, to trial or plea. Indeed, were we to grant relief here, serious questions would be raised in every criminal case where the court dismissed for insufficiency of evidence or even if a jury acquitted. Such constraints would significantly undercut the effect of and policy behind immunizing prosecutors from civil liability for their official acts, *see Imbler v. Pachtman, supra,* 424 U.S. at 426–27, 96 S.Ct. 984.[16] Moreover, there appears to be no need to give private parties license to pursue actions against federal prosecutors. Our experience in this circuit convinces us that district judges are alert to, and adequately protect, the integrity of proceedings before them.

Finally, and of particular significance to an appellate court, there is the ominous prospect of second-stage collateral "policing" litigation starting up after the primary lawsuit has ended. While counsel for appellant take the position that this is such a rare case that its use would be sharply limited, we have little doubt that astute counsel could always argue that allegations of prosecutorial misconduct warrant full appellate review of a district court's refusal to act. Giving appellant standing to pursue the charges against the government would thus have the effect of opening the way to an entirely new class of litigation. In light of the state of legal authority and strong policy considerations contrary to appellant's position, we are not persuaded that such an effect is justified by the circumstances of this case.

*Appeal dismissed; petition for writ of mandamus denied.*

---

15. Our conclusion that the district court had no duty to investigate the charges of misconduct at appellant's bidding disposes of his claim that the refusal to take that action necessitates relief by mandamus. *See Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943).

16. A prosecutor's arguable vulnerability to criminal sanctions under 18 U.S.C. § 1503 (obstruction of justice), 18 U.S.C. § 241 (conspiracy to violate civil rights), 18 U.S.C. § 242 (violation of civil rights), and 18 U.S.C. § 371 (conspiracy) further refutes the need for the private cause of action suggested here.