

paper. *See* Linda Satter, *Judge Named to Handle Grievances Against Starr*, Arkansas Democrat-Gazette, February 9, 2000.

In addition, Mandanici submitted a copy of a letter in this matter to a person who clearly should not have received such copy. This conduct constitutes three direct violations of this Court's Order. Unlike the inferences and assumptions that formed the basis of Mandanici's complaints about Starr's conduct, Mandanici's three known violations of this Court's Order merit serious consideration of both discipline and sanctions, matters that this Court may consider at a later date.

## CONCLUSION

For the foregoing reasons and in the exercise of its discretion, the Court declines to appoint counsel to investigate the matters set forth in Mandanici IV.

Stephen A Smith, Fayetteville, AR, plaintiff pro se.

Robert W. Ray, U.S. Department of Justice, Office of the Independent Counsel, Washington, DC, for Kenneth W Starr, defendant.

### In re Stephen A. SMITH

v.

### Kenneth W. STARR.

No. 99–MC–161.

United States District Court,
E.D. Arkansas,
Western Division.

May 18, 2000.

## ORDER

NANGLE, District Judge.

Pursuant to 28 U.S.C. § 292(b), Chief Judge Roger L. Wollman, of the United States Court of Appeals for the Eighth Circuit, designated this writer to handle the within matter. That designation was necessitated by the action of all of the judges of the Eastern District of Arkansas in recusing themselves on December 21, 1999. The matter before the Court is a September 17, 1999 letter grievance filed by Stephen A. Smith, adopting Francis T. Mandanici's June 4, 1999 letter grievance ("Mandanici IV"). This Court will now proceed.

Pursuant to Rule V(A) of the Model Federal Rules of Disciplinary Enforcement and the inherent power of the Court, Smith asks the Court "to appoint counsel to investigate ... whether Kenneth Starr and/or others in the employ of the Office of Independent Counsel solicited or attempted to solicit false testimony" from Smith and others. Smith Grievance at 2. Smith also requests that the Court appoint counsel to investigate the allegations set forth in Mandanici's grievance.[1] *Id.* For the following reasons, the Court, in the exercise of its discretion, denies Smith's request for appointment of investigative counsel.

## BACKGROUND

The letter grievance at issue stems from ongoing efforts by Francis T. Mandanici to persuade the judges of the Eastern District of Arkansas to sanction Kenneth Starr and the Office of Independent Counsel (hereinafter "OIC") for alleged prosecutorial misconduct in several different matters related to the investigation and subsequent impeachment of President Clinton. For a detailed background of Mandanici's previous efforts and a detailed analysis of Mandanici's current allegations set forth in Mandanici IV, see this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160. On September 17, 1999, Stephen A. Smith adopted Mandanici IV. Smith asks the Court to appoint counsel to investigate the matters raised in Mandanici IV and also requests that the Court "appoint counsel to investigate ... whether Kenneth Starr and/or others in the employ of the Office of Independent Counsel solicited or attempted to solicit false testimony...." Smith Grievance at 2.

## SMITH'S CONNECTION

On June 8, 1995, Stephen A. Smith pled guilty to a misdemeanor for conspiring to misapply loan proceeds from a small business investment company in violation of 18 U.S.C. §§ 371 and 657. Smith Grievance, App. A, at 1539 (Transcript of *United States v. Susan H. McDougal,* No. LR–CR–98–82 (E.D.Ark. Mar.22, 1999)); Gov't's Resp. Smith Grievance at 3. Smith diverted the loan proceeds to "pay off a loan to the Worthen Bank for which he, Jim Guy Tucker, and Jim McDougal were personally liable in connection with land purchases in Huntsville, Arkansas." Gov't's Resp. Smith Grievance at 3, Ex. B, at 1581 (Transcript of *United States v. Susan H. McDougal,* No. LR–CR–98–82 (E.D.Ark. Mar.23, 1999)). Smith testified before the grand jury in July 1995. Smith Grievance, App. A, at 1540. Smith then testified in the 1996 trials of Jim Guy Tucker and Susan and Jim McDougal and appeared again in front of the grand jury on September 17, 1996. *Id.*

In 1999, Smith testified as a defense witness at Susan McDougal's subsequent trial. Smith contends that his 1999 testimony demonstrates that the OIC attempted to solicit false testimony from him in preparation for his grand jury testimony in 1995. Smith Grievance at 1, App. A, at 1540–44. Smith alleges that "the actions of the Office of Independent Counsel went beyond providing mere 'talking points' to a potential witness in a civil suit[.]" Smith Grievance at 1. Smith asserts, "I was provided a written script, containing false testimony, by the Office of Independent Counsel, and this script was to be read by me as my testimony under oath to a federal grand jury." *Id.* Thus, Smith alleges that the Court should appoint counsel to investigate whether Starr and the OIC

---

1. The Court addresses those specific allegations in its Order denying Mandanici's request for appointment of investigative counsel. *See* this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160. Smith also asks the Court to appoint counsel to investigate Starr's alleged misconduct in connection with the Paula Jones civil suit. Smith Grievance at 2. *See* this Court's Order of this date in *In re: Julie Hiatt Steele v. Kenneth W. Starr,* Misc. No. 99–MC–162, at note 10 and accompanying text for the Court's analysis of that allegation.

attempted to solicit false testimony from Smith.

### STANDING

█ Initially, the Court will address the question of whether Smith has standing. Smith asserts that he has standing because he "ha[s] been investigated and prosecuted by Mr. Starr and the Office of Independent Counsel, and [has] twice appeared before his Grand Juries in the Eastern District of Arkansas and ha[s] testified as a witness for the Office of Independent Counsel at trial in the Eastern District of Arkansas." Smith Grievance at 1. Further, Smith alleges that he has standing because he testified under oath at Susan McDougal's 1999 trial. Because Mr. Smith is bringing an ethical grievance pursuant to Rule V(A) of the Model Federal Rules of Disciplinary Enforcement, however, he need not have any more connection with this Court than any other citizen.[2]

The Eighth Circuit has held that a citizen has standing to bring an ethics grievance to the attention of the Court, but the citizen's participation in the investigation stops there. *Starr v. Mandanici*, 152 F.3d at 748, 750–51.[3] This rule applies even if the informant is a former party to a case where the alleged misconduct occurred. *Eaton v. Gerdes*, No. 97–2326, 1997 WL 572151, at *1 (8th Cir. Sept.16, 1997) (per curiam). In *Eaton*, the Eighth Circuit held that an informant seeking sanctions against his former attorney " 'merely supplied information for the court's consideration' " and "lacked standing to appeal the District Court's decision not to discipline the attorney." *Id.* (citing *Mattice v. Meyer*, 353 F.2d 316, 319 (8th Cir.1965)). Other circuits have also applied this rule in various situations. *See Ramos Colon v. United States Attorney for the Dist. of P.R.*, 576 F.2d 1, 2, 6, 9 (1st Cir.1978) (A former defendant "cannot challenge the court's decision not to discipline.... It remains for the court to vindicate its authority, if it so chooses."); *see also Application of Phillips*, 510 F.2d 126, 126 (2d Cir.1975) (per curiam) (pro se litigant in previous matter could not compel court to sanction opposing counsel because "a private person ... has no standing to participate in a disciplinary proceeding").

In *Starr v. Mandanici*, Judge McMillian explained that Rule V(A) does not change this general rule. *See Starr v. Mandanici*, 152 F.3d at 751 (holding that Rule V(A) does not "elevate[ ] Mandanici's status above that of an informant"). The Seventh Circuit has issued a similar ruling. In *In Matter of Continental Steel Corp.*, No. 91–3387, 1992 WL 133897, at *1 (7th Cir. June 17, 1992), the bankruptcy court declined to refer the appellants' grievance report to the Indiana Disciplinary Commission of the Indiana Supreme Court pursuant to Rule V(A) of the Rules of Disciplinary Enforcement for the Southern District of Indiana, finding no fraudulent behavior. The district court determined that the bankruptcy court's findings were not clearly erroneous. *Id.* On appeal, the Seventh Circuit held that appellants lacked standing to appeal. The court wrote,

> [b]y bringing their Report to the bankruptcy court, the appellants did not initiate a lawsuit or become parties to a disciplinary proceeding but simply served as informants to the court.... *Even if the reporting person is a party or counsel to a party in the case where the ethical violation has occurred*, the

---

2. Smith's grievance adopts the June 4, 1999 grievance filed by Francis T. Mandanici against Kenneth W. Starr "[p]ursuant to Rule V(A) of the [Model Federal] Rules of Disciplinary Enforcement and the power of the court...." Smith Grievance at 1.

3. In his present grievance, Mr. Mandanici concedes this limited role, stating, "My standing to file this present complaint is in accord with the Eighth Circuit's ruling that a citizen or lawyer has the 'standing to complain or inform the court of alleged misconduct.' [*Mandanici*, 152 F.3d at 748]. It is conceded, however, that once I file this complaint, I then lack formal standing to obtain any relief." *In re: Francis T. Mandanici v. Kenneth W. Starr*, Misc. No. 99–MC–160, Mandanici IV at 6.

role of a party or counsel ends after a report has been submitted to the court. "It remains for the court to vindicate its authority."

*Id.* at *2 (citations omitted) (emphasis added). Accordingly, the Court holds that Smith may bring his allegations of misconduct to this Court's attention, but his involvement ceases at that point.

### INTERPRETATION OF RULE V(A)

By adopting Mandanici's grievance, Smith brings his grievance pursuant to Rule V(A) of the Rules of Disciplinary Enforcement, Rule 8.3 of the Arkansas Rules of Professional Conduct,[4] and the inherent supervisory authority of this Court. Accordingly, before proceeding on the merits of Smith's allegations, the Court must determine whether Rule V(A) of the Model Federal Rules of Disciplinary Enforcement creates a mandatory duty to refer any allegation of misconduct to counsel for investigation or whether the Rule provides the Court with some discretion to determine whether a referral is required.[5] The Court finds that it is not compelled to refer this matter automatically to counsel for investigation. Further, the informant must substantiate his allegations of misconduct prior to referral.[6] In the exercise of its discretion, after reviewing the facts, the Court finds that Smith's contentions do not merit appointment of counsel.

4. Under Rule 8.3, "[A] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority." Ark. R.Prof.Cond. 8.3.

5. The Court has adopted the Model Federal Rules of Disciplinary Enforcement and the Model Rules of Professional Conduct. *Starr v. Mandanici,* 152 F.3d at 742 n. 1. Mod.Fed. R.Disc.Enf. V(A) provides that:

When misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court shall come to the attention of a Judge of this Court, whether by complaint or otherwise, and the

### ANALYSIS

▮ Smith asks the Court "to appoint counsel to investigate ... whether Kenneth Starr and/or others in the employ of the Office of Independent Counsel solicited or attempted to solicit false testimony and to investigate all other matters raised in Mr. Mandanici's grievance...." Smith Grievance at 2. Smith claims that when he met with the OIC to prepare for his grand jury testimony in 1995, the OIC provided him with a written script containing false testimony. Smith alleges that the OIC directed him to read this script as his testimony before the grand jury. *Id.* at 1. Smith, however, asserts no specific allegation that anyone in the Office of Independent Counsel ever asked him directly or indirectly to lie. In fact, on direct examination at Susan McDougal's trial 1999, Smith testified that he thought the OIC was seeking "truthful information that would conform with their theory of the case."[7] *Id.* at App. A, at 1564.

With regard to the written script provided to him by the OIC, Smith responded to the following questions posed by Amy St. Eve of the OIC during Susan McDougal's first trial in 1996:

> **St. Eve:** Now, Mr. Sutton [Tucker's attorney] made some suggestion that there was information—I believe you

applicable procedure is not otherwise mandated by these Rules, the Judge shall refer the matter to counsel for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate. Mod.Fed.R.Disc.Enf. V(A).

6. For a detailed analysis of the Court's interpretation of Rule V(A), see this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160.

7. Smith testified that "[t]hey had a sort of story line about what happened. And if you had information that would confirm that, they—and truthful information, they were interested in eliciting that. And if your information was not quite that, it would seem to be at times they'd yell." *Id.* at 1564.

testified that when you came and you reviewed the draft that there was some information in there about Mr. Tucker that you changed, or you weren't completely comfortable with, correct?

**Smith:** That's correct.

**St. Eve:** Did I ever ask you to lie about Mr. Tucker?

**Smith:** You never asked me to lie about Mr. Tucker.

**St. Eve:** Have I ever asked you to lie about anything, Dr. Smith?

**Smith:** No, you haven't.

**St. Eve:** And in looking at the grand jury statement the day that you came in and reviewed the draft, did anyone try to pressure you to keep the language about Mr. Tucker in that grand jury statement?

**Smith:** No. When I suggested that I wasn't comfortable with that you took it out.

**St. Eve:** And was it made clear to you, Dr. Smith, when you came in that this was just a draft statement to work off of?

**Smith:** Yes.

**St. Eve:** And that you were the one that had to be comfortable that it was a hundred percent true and accurate?

**Smith:** Yes, ma'am.[8]

Gov't's Resp. Smith Grievance, Ex. B, at 1570–71 (quoting from transcript of 1996 trial).

The Court finds that this colloquy speaks for itself. Although Smith later alleged that he was pressured to lie by the OIC, the above testimony directly contradicts that allegation. Further, Smith has put forth no additional evidence that he was asked to lie. Accordingly, Smith's request for appointment of investigative counsel based on this allegation is denied.[9] The Court also denies Smith's request to appoint counsel to investigate Mandanici's allegations for the reasons set forth in the Court's Order addressing Mandanici IV. *See* this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160.

### CONCLUSION

Finding no evidence that Kenneth Starr or the OIC attempted to suborn perjury from Smith, the Court declines Smith's request to appoint counsel to investigate his grievance. Smith acknowledged that the OIC never asked him to lie. He stated that he was provided a script, but he conceded that the OIC altered the substance of the script after Smith informed them that it did not contain accurate information. To refer a matter to an investigator based on these meager facts would open the floodgates for meritless allegations of misconduct. Smith's request is denied.

---

**8.** It is interesting to note that Smith's lawyer was present with him while he was revising the draft statement. *See* Gov't's Resp. Smith Grievance, Ex. B, at 1574.

**9.** By referring to a portion of his testimony in Susan McDougal's trial, Smith appears to be asserting another allegation against Starr and the OIC. Smith Grievance at 1, App. A, at 1539–50. He includes trial testimony where he suggested that the OIC violated his plea agreement by increasing the maximum fine on the presentence report from the agreed upon $1,000 to $100,000. *Id.* at App. A, at 1548–50. However, it was established through further testimony that the amount indicated on the report was an error made by the probation officer that prepared the report. Gov't's Resp. Smith Grievance at 10, Ex. B, at 1590–93. Accordingly, the Court also deems this issue to be completely frivolous.