In re Julie Hiatt STEELE

v.

Kenneth W. STARR.

No. 99–MC–162.

United States District Court,
E.D. Arkansas,
Western Division.

May 18, 2000.

Nancy Luque, Reed Smith Shaw & McClay LLP, Washington, DC, for Julie Hiatt Steele, plaintiff.

Robert W. Ray, U.S. Department of Justice, Office of the Independent Counsel, Washington, DC, for Kenneth W Starr, defendant.

## ORDER

NANGLE, District Judge.

Pursuant to 28 U.S.C. § 292(b), Chief Judge Roger L. Wollman, of the United States Court of Appeals for the Eighth Circuit, designated this writer to handle the within matter. That designation was necessitated by the action of all of the judges of the Eastern District of Arkansas in recusing themselves on December 21, 1999. The matter before the Court is an October 12, 1999 letter grievance filed by Julie Hiatt Steele, adopting Francis T. Mandanici's June 4, 1999 letter grievance ("Mandanici IV"). This Court will now proceed.

Pursuant to Rule V(A) of the Model Rules of Disciplinary Enforcement and the inherent supervisory power of the Court, Steele asks the Court "to appoint counsel to investigate whether Kenneth Starr and/or others in the employ of the [Office of Independent Counsel] solicited or attempted to solicit false testimony" from Steele and others. Steele Grievance at 2.

Steele testified under oath at Susan McDougal's 1999 trial about the Office of Independent Counsel's (hereinafter "OIC") alleged previous attempts to solicit false testimony. *Id.* at 1, App. A, at 2436–38 (Transcript of *United States v. Susan H. McDougal,* 47 F.Supp.2d 1103 (E.D.Ark. 1999)). Steele also requests that the Court appoint counsel to investigate the allegations set forth in Mandanici's grievance.[1] *Id.* at 1104. For the following reasons, the Court, in the exercise of its discretion, denies Steele's request for appointment of investigative counsel.

## BACKGROUND

The letter grievance at issue stems from ongoing efforts by Francis T. Mandanici to persuade the judges of the Eastern District of Arkansas to sanction Kenneth Starr and the Office of Independent Counsel (hereinafter "OIC") for alleged prosecutorial misconduct in several different matters related to the investigation and subsequent impeachment of President Clinton. For a detailed background of Mandanici's previous efforts and a detailed analysis of Mandanici's current allegations set forth in Mandanici IV, see this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160. On October 12, 1999, Julie Hiatt Steele adopted Mandanici IV. Steele asks the Court to appoint counsel to investigate the matters raised in Mandanici IV and also requests that the Court "appoint counsel to investigate whether Kenneth Starr and/or others in the employ of the OIC solicited or attempted to solicit false testimony...." Steele Grievance at 2.

1. The Court addresses those specific allegations in its Order denying Mandanici's request for appointment of investigative counsel. *See* this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160.

2. In March 1997, Steele told Newsweek reporter Michael Isikoff that Kathleen Willey told her of a sexual advance by President Clinton toward Willey in November 1993. Steele later recanted this story on July 31, 1997 and told Isikoff that she had originally lied to him. *See* Transcript of *United States v.*

## STEELE'S CONNECTION

Steele's connection with the Office of Independent Counsel stems from her involvement in the Paula Jones case. On January 7, 1999, Julie Hiatt Steele was indicted "on four criminal charges of making false statements and obstruction of justice in violation of 18 U.S.C. §§ 1001 and 1053." Gov't's Resp. Steele Grievance at 4. Steele was charged with lying to two federal grand juries, as well as to F.B.I. agents and in an affidavit regarding conversations that she allegedly had with Kathleen Willey.[2] *Id.* at 4, Ex. D, at 7–8 (Gov't's Appellee Br. in *United States v. Julie Hiatt Steele,* No. 99–4589, 2000 WL 690494 (4th Cir.)). Steele was also charged with "seeking to influence the testimony of witnesses in the Paula Jones civil case and in the grand jury investigation in order to obstruct the due administration of justice." *Id.* at 4.

Prior to trial, Steele filed several motions to dismiss her indictment. Gov't's Resp. Steele Grievance, Ex. D, at 8. Chief Judge Hilton denied all of Steele's motions, finding sufficient evidence to proceed to trial. *Id.* at Ex. D, at 11. Steele's trial began on May 3, 1999. *Id.* at Ex. D, at 12. Steele moved for a judgment of acquittal at the end of the government's case. Chief Judge Hilton denied Steele's motion, finding "sufficient evidence to go forward on all of the counts." *Id.* at Ex. A, at 797 (Transcript of *United States v. Julie Hiatt Steele,* Cr. No. 99–9–A, 2000 WL 690494 (E.D.Va. May 6, 1999)).[3] The case result-

*Susan H. McDougal,* No. LR–CR–98–82, at 2386 (Steele Grievance, App. A). Steele told Isikoff that Willey asked her to lie to Isikoff in order to corroborate Willey's story. *Id.* 2430–31. Steele related her second story in a subsequent affidavit and in an interview with the FBI, as well as testifying to that effect before two federal grand juries.

3. In his Order denying attorney's fees, Chief Judge Hilton referred to the motion for judgment on acquittal, explaining that "after hearing all of the evidence and observing all of the witnesses," he denied Steele's motion for ac-

ed in a hung jury, a mistrial was declared, and the government did not retry Steele. *Id.* at 5.

Steele then filed a petition for attorney's fees. Basing her claim on the Hyde Amendment, 18 U.S.C. § 3006, Steele contended that the OIC's prosecution of her was "vexatious, frivolous, and in bad faith." Gov't's Resp. Steele Grievance, Ex. B, at 1 (*United States v. Steele,* Cr. No. 99–9–A (E.D.Va. Aug. 3, 1999)). Finding that "there was sufficient evidence to submit all of the counts to the jury for their verdict," Chief Judge Hilton denied Steele's petition under the Hyde Amendment. *Id.* at Ex. B, at 1–2. Chief Judge Hilton found that "the prosecution of Defendant Steele was not vexatious, frivolous, or in bad faith." *Id.* at Ex. B, at 2. An appeal of this order is currently pending before the Fourth Circuit. *United States v. Steele,* Cr. No. 99–9–A, slip op. at 1 (E.D.Va. Aug. 3, 1999), *appeal docketed* No. 99–4589 (4th Cir.).

In April 1999, Steele testified in Susan McDougal's second trial. Steele Grievance, App. A, at 2436–38 (Transcript of *United States v. Susan H. McDougal,* 47 F.Supp.2d 1103 (E.D.Ark. 1999)). In her testimony, Steele asserted her belief that the OIC attempted to suborn false testimony from her by pressuring her to lie. Specifically, Steele testified that she "believe[d][she] was to support Kathleen Willey's version of events." *Id.* at App. A, at 2376. Steele also testified that she believed that she could avoid indictment "by changing [her] story." *Id.* at App. A, at 2437. When asked to explain, Steele testified, "Because they said to me, you know, could it be this, you could say that, could it be something else?" *Id.*

With respect to the foregoing sequence of events, Steele contends that Starr and the OIC "provided her with a choice: she could say what they wanted her to say or be indicted." Steele Grievance at 2. Steele asserts that this choice "went beyond mere questioning" and constituted an attempt to solicit false testimony. *Id.* Steele asserts that the situation was exacerbated by the fact that Starr had a conflict of interest. This alleged conflict arose when "Mr. Starr's law firm, through Mr. Starr and others, [gave] advice to Ms. Jones in *Jones v. Clinton.*" *Id.* Steele contends that Starr "chose a 'side' " by providing that advice. Thus, Steele alleges that the Court should appoint counsel to investigate whether Starr and the OIC attempted to solicit false testimony from Steele, as well as investigating Mandanici's allegations. *Id.*

### STANDING

■ Initially, the Court will address the question of whether Steele has standing. Steele asserts that she has standing because "she has been investigated and prosecuted by Mr. Starr and the Office of Independent Counsel ('OIC'), and she has appeared and testified as a witness during the recent trial of Susan McDougal (*United ed States v. Susan McDougal,* 47 F.Supp.2d 1103) in this District...." Steele Grievance at 1. Because Ms. Steele is bringing an ethics grievance pursuant to Rule V(A) of the Model Federal Rules of Disciplinary Enforcement, however, she need not have any more connection with this Court than any other citizen.[4]

The Eighth Circuit has held that a citizen has standing to bring an ethics grievance to the attention of the Court, but the citizen's participation in the investigation stops there. *Starr v. Mandanici,* 152 F.3d at 748, 750–51.[5] This rule applies even if

---

quittal, "effectively ruling that the evidence was sufficient for a reasonable trier of fact to find the defendant guilty." *See* Gov't's Resp. Steele Grievance, Ex. B, at 1 (*United States v. Steele,* Cr. No. 99–9–A (E.D.Va. Aug. 3, 1999)).

4. Steele's grievance "adopts the June 4, 1999 grievance filed by Francis T. Mandanici

against Kenneth W. Starr pursuant to Rule V(A) of the Model Rules of Disciplinary Enforcement and the inherent supervisory power of this Court." Steele Grievance at 1.

5. In his present grievance, Mr. Mandanici concedes this limited role, stating, "My standing to file this present complaint is in accord

the informant is a former party to a case where the alleged misconduct occurred. *Eaton v. Gerdes,* No. 97–2326, 1997 WL 572151, at *1 (8th Cir. Sept.16, 1997) (per curiam). In *Eaton,* the Eighth Circuit held that an informant seeking sanctions against his former attorney " 'merely supplied information for the court's consideration' " and "lacked standing to appeal the District Court's decision not to discipline the attorney." *Id.* (citing *Mattice v. Meyer,* 353 F.2d 316, 319 (8th Cir.1965)). Other circuits have also applied this rule in various situations. *See Ramos Colon v. United States Attorney for the Dist. of P.R.,* 576 F.2d 1, 2, 6, 9 (1st Cir.1978) (A former defendant "cannot challenge the court's decision not to discipline.... It remains for the court to vindicate its authority, if it so chooses."); *see also Application of Phillips,* 510 F.2d 126, 126 (2d Cir.1975) (per curiam) (pro se litigant in previous matter could not compel court to sanction opposing counsel because "a private person ... has no standing to participate in a disciplinary proceeding").

In *Starr v. Mandanici,* Judge McMillian explained that Rule V(A) does not change this general rule. *See Starr v. Mandanici,* 152 F.3d at 751 (holding that Rule V(A) does not "elevate[ ] Mandanici's status above that of an informant"). The Seventh Circuit has issued a similar ruling. In *In Matter of Continental Steel Corp.,* No. 91–3387, 1992 WL 133897, at *1 (7th Cir. June 17, 1992), the bankruptcy court declined to refer the appellants' grievance report to the Indiana Disciplinary Commission of the Indiana Supreme Court pursuant to Rule V(A) of the Rules of Disciplinary Enforcement for the Southern District of Indiana, finding no fraudulent behavior. The district court determined that the bankruptcy court's findings were not clearly erroneous. *Id.* On appeal, the Seventh Circuit held that appellants lacked standing to appeal. The court wrote,

> [b]y bringing their Report to the bankruptcy court, the appellants did not initiate a lawsuit or become parties to a disciplinary proceeding but simply served as informants to the court.... *Even if the reporting person is a party or counsel to a party in the case where the ethical violation has occurred,* the role of a party or counsel ends after a report has been submitted to the court. "It remains for the court to vindicate its authority."

*Id.* at *2 (citations omitted) (emphasis added). Accordingly, the Court holds that Steele may bring her allegations of misconduct to this Court's attention, but her involvement ceases at that point.

### INTERPRETATION OF RULE V(A)

■ By adopting Mandanici's grievance, Steele brings her grievance pursuant to Rule V(A) of the Rules of Disciplinary Enforcement, Rule 8.3 of the Arkansas Rules of Professional Conduct,[6] and the inherent supervisory authority of this Court. Accordingly, before proceeding on the merits of Steele's allegations, the Court must determine whether Rule V(A) of the Model Federal Rules of Disciplinary Enforcement creates a mandatory duty to refer any allegation of misconduct to counsel for investigation or whether the Rule provides the Court with some discretion to determine whether a referral is required.[7]

with the Eighth Circuit's ruling that a citizen or lawyer has the 'standing to complain or inform the court of alleged misconduct.' [*Mandanici,* 152 F.3d at 748]. It is conceded, however, that once I file this complaint, I then lack formal standing to obtain any relief." *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160, Mandanici IV at 6.

**6.** Under Rule 8.3, "[A] lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority." Ark. R.Prof.Cond. 8.3.

**7.** The Court has adopted the Model Federal Rules of Disciplinary Enforcement and the Model Rules of Professional Conduct. *Starr v. Mandanici,* 152 F.3d at 742 n. 1. Mod.Fed. R.Disc.Enf. V(A) provides that:

The Court finds that it is not compelled to refer this matter automatically to counsel for investigation. Further, the informant must substantiate her allegations of misconduct prior to referral.[8] Steele's allegations do not warrant appointment of investigative counsel.

## ANALYSIS

■ Steele asks the Court "to appoint counsel to investigate whether Kenneth Starr and/or others in the employ of the OIC solicited or attempted to solicit false testimony, and to investigate all other matters raised in Mr. Mandanici's grievance...." Steele Grievance at 2. Steele concedes that "a prosecutor often pushes a witness to state that which the *prosecutor believes* to be true, [but] there are two facts which remove this situation from that norm[.]" *Id.* (emphasis in original). Steele contends that the first factor is that "the individual whom Ms. Steele was supposed to corroborate [Kathleen Willey] had herself lied to the OIC after having been granted immunity, *and* having failed an OIC polygraph[.]" *Id.* (emphasis in original).[9] The second factor, according to Steele, is that Starr had a conflict of interest in that "Mr. Starr's law firm, through Mr. Starr and others, had given legal advice to Ms. Jones in *Jones v. Clinton.*" *Id.* In the exercise of its discretion, after reviewing the facts, the Court finds that Steele's contentions do not merit appointment of counsel.

Initially, and most importantly, Steele brings forth no evidence to support her claim that the OIC ever asked her to supply false testimony. To support her claim, Steele provided this Court with a copy of her testimony at Susan McDougal's trial in April 1999. All that this testimony suggests, however, is that Steele *thought* she could avoid an indictment by changing her story. Steele Grievance, App. A, at 2437. There is simply no indication that any member of the OIC stated or inferred, "we know you are telling us the truth, but we insist that your testimony corroborate Willey's or we will seek an indictment against you," or words to that effect or implication. The evidence indicates that the OIC reasonably believed that Steele was lying. Steele had already changed her story, and even though Steele asserts that she had no reason to lie the second time, the fact remains that she admitted to lying once (the first time she discussed the matter). Thus, it was entirely reasonable for the OIC to believe that she was lying at the time they sought indictment against her, as was found by Chief Judge Hilton in two separate rulings. *See* Gov't's Resp. Steele Grievance, Ex. A (Transcript of *United States v. Julie Hiatt Steele,* Cr. No. 99–9–A (E.D.Va. May 6, 1999)); Gov't's Resp. Steele Grievance, Ex. B (Transcript of *United States v. Julie Hiatt Steele,* Cr. No. 99–9–A (E.D.Va. Aug. 3, 1999)).

Steele essentially alleges that the OIC attempted to suborn perjury because it was unreasonable for the OIC to credit Kathleen Willey's testimony and the testimony of other trial witnesses over Steele's. The prosecutor, however, is entitled to credit one witness's testimony over another's; provided that he has a reasonable basis for doing so. The grand jury obvi-

---

When misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court shall come to the attention of a Judge of this Court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Rules, the Judge shall refer the matter to counsel for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate.

Mod.Fed.R.Disc.Enf. V(A).

8. For a detailed analysis of the Court's interpretation of Rule V(A), see this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160.

9. The government asserts that Willey did, in fact, pass a lie detector test. *See* Gov't's Resp. Steele Grievance, Ex. C, at 10.

ously believed that the OIC presented sufficient evidence to support an indictment. Further, Steele moved to dismiss the indictment before trial and then moved for a judgment of acquittal during trial. Chief Judge Hilton denied both motions and found that there was "sufficient evidence to go forward on all of these counts." Gov't's Resp. Steele Grievance, Ex. A, at 797; Ex. D, at 11. In Steele's petition for attorney's fees under the Hyde Amendment, she alleged that the OIC's prosecution of her was vexatious, frivolous and in bad faith. Chief Judge Hilton denied Steele's petition, explaining that "the evidence was sufficient for a reasonable trier of fact to find the defendant guilty." *Id.* at Ex. B, at 1. Chief Judge Hilton's rulings support the Court's decision to decline appointment of counsel to investigate this allegation.

Steele also contends that Starr suffered from a conflict of interest because "Mr. Starr's law firm, through Mr. Starr and others, had given legal advice to Ms. Jones in *Jones v. Clinton.* By doing so, he chose a 'side,' as between Ms. Jones and President Clinton." Steele Grievance at 2. Steele neglected to inform the Court that she also raised this issue before Chief Judge Hilton in a motion to dismiss her indictment. Gov't's Resp. Steele Grievance, Ex. D, at 10. Chief Judge Hilton found no evidence of prosecutorial misconduct. *Id.* at 11; *see also* Steele Grievance, App. A, at 2414. The Court certainly gives weight to Chief Judge Hilton's finding on this matter. Further, the Court finds, based on its own analysis, that Steele's allegation is without merit.

■ Although Steele does not elaborate, the Court assumes that part of Steele's allegation pertains to the fact that, prior to becoming Independent Counsel, Starr considered filing an amicus brief in *Jones v. Clinton,* which would argue that the President should not be immune from suit while

he was in office. *See* John Solomon, *More Revelations about Starr,* Houston Chronicle, Aug. 12, 1994, at 8, *available in* 1994 WL 4199314. The Court does not believe that this activity resulted in a conflict of interest. Starr's work was on the purely constitutional question of whether a sitting president could be sued in a civil suit. Mr. Starr is a former federal circuit judge as well as a former Solicitor General of the United States. He has a noted reputation for knowledge in the area of constitutional law, and it certainly should come as no surprise that he might be consulted by one party or the other on an important constitutional issue such as this one. Additionally, when Starr was appointed Independent Counsel, he ceased work on the brief. *Id.* For those reasons, the Court rejects Steele's allegation that this work led Starr to choose a side, eventually leading him to seek an improper indictment against Steele for perjury.[10]

Accordingly, the Court declines to appoint counsel to investigate this matter. The Court also denies Steele's request to appoint counsel to investigate Mandanici's allegations for the reasons set forth in this Court's Order of this date addressing Mandanici's letter grievance. *See In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160.

**CONCLUSION**

Finding no evidence that Kenneth Starr or the OIC attempted to suborn perjury from Steele, the Court declines Steele's request to appoint counsel to investigate her grievance. Ms. Steele presents the Court with absolutely no evidence that the OIC ever directly or impliedly asked her to lie. Further, Steele's conflict of interest allegation is devoid of merit and her request is denied.

---

**10.** Additional allegations regarding Starr's connection with Paula Jones's attorneys are being handled by the Department of Justice. Accordingly, this Court will not interfere with that ongoing investigation. *See* this Court's Order of this date in *In re: Francis T. Mandanici v. Kenneth W. Starr,* Misc. No. 99–MC–160, note 8 and accompanying text.